## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**WEST AMERICAN INSURANCE COMPANY,**
        **Plaintiff,**

**v.**                                                          **Civil Action No. 2:05cv506**

**JOHNS BROTHERS, INC.,**
**and**
**PAULA THOMPSON, individually and**
**as parent and next friend of ROSS**
**CLAPHAM and KENDAL CLAPHAM,**
**and**
**PAUL CLAPHAM,**
**and**
**PETROCHEM RECOVERY SERVICES, INC.,**
        **Defendants.**

### ORDER AND OPINION

Currently before the court is defendant Johns Brothers' "Motion to Dismiss Cross Claim" filed pursuant to Federal Rule of Civil Procedure 12(b)(1). Also before the court is defendant Petrochem Recovery Services' motion to dismiss itself as a party to this action pursuant to Federal Rule of Civil Procedure 12(b)(6). After examination of the briefs and record, the court determines that oral argument is unnecessary because the facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. For the reasons set out herein, the court **GRANTS** defendant Johns Brothers' motion and **DENIES** defendant Petrochem Recovery Services' motion.

### I. Factual and Procedural Background

This matter arises from a heating oil spill that occurred at the residence of defendants,

Paula Thompson, Paul Clapham, Ross Clapham, and Kendal Clapham ("the Claphams").[1]  Johns Brothers, a company which supplies residential heating oil, contracted with the Claphams to deliver heating oil to their house.  On numerous occasions between October 2004 and January 2005, Johns Brothers delivered heating oil to the Claphams' residence and performed inspections of their heating system.  Additionally, on multiple occasions during this same period, the Claphams complained to Johns Brothers regarding oil odors and other problems inside their home.  On January 31, 2005 Johns Brothers, once again responding to a complaint, "discovered a return line lying on the ground under the house, which had corroded and caused an oil leak." (Compl. ¶ 19.)  Subsequent to the discovery of oil beneath the Claphams' residence, Petrochem Recovery Services ("Petrochem") was hired to perform oil reclamation and cleanup.

     Plaintiff, West American Insurance Company ("West American") provided a series of commercial general liability policies insuring Johns Brothers from April 2001 through April 2006.  West American filed the instant action seeking a declaratory judgment that the damages sustained by the Claphams as a result of the oil spill are not covered by the commercial liability policy issued to Johns Brothers.  West American contends: (1) the incident does not qualify as an "occurrence" under the policy; (2) the policy excludes coverage for "expected" damages from the insured's standpoint; (3) the policy excludes coverage for damages by reason of assumption of liability in contract; (4) the policy excludes coverage for damages arising out the "discharge, dispersal, seepage, migration, release, or escape of pollutants;" (5) the policy excludes coverage for damages arising out of the insured's "product;" (6) the policy excludes coverage for damages

---

[1] Paula Thompson and her minor children, Ross Clapham and Kendal Clapham, are citizens of Virginia and Paul Clapham is a citizen of the United Kingdom.  As the cross claim filed by these individuals refers to themselves collectively as the Claphams, the court will refer to them as such.

arising out of the insured's "work;" (7) the policy excludes coverage for impaired property or property not physically injured; (8) the policy requires the insured promptly notify West American of an "occurrence" or offense which may result in a claim or suit; (9) the policy requires the insured to cooperate with West American in claims investigations; and (10) the policy only covers losses or damages occurring within the policy period. (Compl. ¶¶ 22-32.)

In response to the declaratory judgment action, Johns Brothers filed a counterclaim alleging that the policy covers the Claphams' damages and that West American is under a duty to defend Johns Brothers in connection with the Claphams' claims. The Claphams, in turn, filed a cross claim against Johns Brothers seeking relief for the damages caused by the oil spill premised on theories of negligence, breach of contract, and fraud. In response, Johns Brothers filed a motion to dismiss the cross claim arguing that West American's rights and obligations must be declared prior to a lawsuit on the merits of the Claphams' damages claims. In addition, Petrochem filed a motion to dismiss itself as a party alleging that because Petrochem only performed cleanup of the oil spill it is not involved in the instant controversy. Both motions are now ripe for review.

## II.  Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction may attack the complaint on its face or attack underlying jurisdictional claims contained in the complaint. Lane v. David P. Jacobson & Co., 880 F. Supp. 1091, 1094 (E.D. Va. 1995). The burden of establishing jurisdiction lies with the party bringing a claim, and when determining jurisdiction, the district court may consider facts outside of the pleadings without converting the motion into one for summary judgment. Adams v. Bain, 697 F.2d 1213,

1219 (4th Cir. 1982).  Likewise, in weighing the evidence the court may resolve factual questions

to determine its jurisdiction.  Id.

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim should not be

granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

[its] claim which would entitle [it] to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957);

Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).  The court must

"assume the truth of all facts alleged in the complaint and the existence of any fact that can be

proved, consistent with the complaint's allegations."  Eastern Shore Markets, Inc. v. J.D.

Associates Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000) (citations omitted).  While the court

must take the facts in the light most favorable to the plaintiff, the court is not bound with respect

to the complaint's legal conclusions.  Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991).

### III.  Jurisdiction

Plaintiff's declaratory judgment action is properly before this court pursuant to Rule 57 of

the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 which provides this court the

authority to "declare the rights and other legal relations of any interested party seeking such

declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  The Fourth

Circuit has "long recognized the discretion afforded to district courts in determining whether to

render declaratory relief."  Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 421 (4th

Cir. 1998).  Such discretion was solidified by Wilton v. Seven Falls Co., 515 U.S. 277, 289-90

(1995), in which the Supreme Court concluded that "abuse of discretion" was the proper standard

of review for "decisions about the propriety of hearing declaratory judgment actions"  because

the "facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the

case for resolution, are particularly within [the district court's] grasp." Id.  Although Wilton

requires that a district court is given significant discretion, the Fourth Circuit has articulated

several factors to help guide the district court in its decision.  Aetna, 139 F.3d 423-24.  Such

factors include: (1) whether the lawsuit will clarify the legal relations in issue; (2) whether it will

provide relief from the "uncertainty, insecurity, and controversy giving rise to the proceeding;"

(3) whether the issues in the federal action can more efficiently be resolved in state court; (4)

whether there would be unnecessary "entanglement" between state and federal courts based on

overlapping issues of fact or law.  Id. at 422 (citations omitted).

## IV.  Analysis

### A.  Johns Brothers' Motion to Dismiss the Cross Claim

On December 19, 2005, the Claphams filed a cross claim against Johns Brothers, alleging

that Johns Brothers was negligent and/or grossly negligent for not discovering defects in the oil

system, breached its contract with the Claphams to supply heating oil and provide annual

maintenance and inspection of the Claphams' heating system, and made fraudulent statements by

repeatedly assuring the Claphams that there was no oil leaking on the property.  Johns Brothers

seeks to dismiss the Claphams' cross claim, characterizing the basis for the claim as separate and

distinct from the declaratory judgment action.  Countering such argument, the Claphams contend

that the underlying oil spill arises out of the same transaction or occurrence as the subject matter

of Johns Brothers' counterclaim and argue that to avoid duplicative discovery and duplicative

litigation, all matters should be adjudicated at the same time in the same forum. (Def. Cross

Claim 2.)  After carefully considering the issues raised in West American's declaratory judgment

action and Johns Brothers' counterclaim, the court concludes that although in some

circumstances a single suit addressing all claims is efficient and appropriate, here, the Claphams' cross claim should not be litigated in conjunction with plaintiff's declaratory judgment action.

The necessity for an insurer and the insured to determine their rights and obligations under an insurance contract prior to the litigation of the underlying dispute between the insured and a third party is dictated by common sense, and has been long established in the Fourth Circuit. In American Cas. Co. of Reading, Pa. v. Howard, 173 F.2d 924, 928 (4th Cir. 1949) the court stated that if the insurer does not know its rights and obligations prior to litigation, it is "placed in a precarious dilemma." Elaborating, the court explained:

> If [the insurer], as it claims, owes no further duties to the other parties, it can retire gracefully and leave the [insured] and the [third party] to settle their own differences. If, however, [the insurer] must defend the . . . action and pay any judgment recovered therein, [the insurer] is entitled to know this. Manifestly, if these duties are imposed on [the insurer], it will be to [the insurer's] interest either to defend this action vigorously or to attempt an amicable settlement.
>
> On the other hand, [the insured] should be informed whether or not he must alone defend the . . . action and whether he alone must pay any judgment recovered in that action. Surely his willingness to attempt a settlement and the vigor of his defense will be materially affected by the decision of these questions . . . . [The third party's] receptivity to offers of settlement as well as his conduct of the trial . . . may be quite different depending upon whether or not he might fight not only [the insured] but [the insurer] and whether, if he recovers a judgment, he can look for its satisfaction only to [the insured] or, if [the insured] fails to pay such judgment, he can ultimately resort to [the insurer] for its payment.

Id. Likewise, in more recent cases, the Fourth Circuit has recognized the appropriateness of declaratory relief in similar situations. See Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir. 1994) ("A dispute between a liability insurer, its insured, and a third party with a tort claim against the insured over the extent of the insurer's responsibility for that claim is an 'actual controversy' within the meaning of the federal Declaratory Judgment Act, even [if] the tort claimant has not yet reduced his claim against the insured to judgment."), abrogated in part

6

by <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277 (1995); <u>Vermont Mut. Ins. Co. v. Everette</u>, 875 F.

Supp. 1181, 1186 (E.D. Va. 1995) ("Undoubtedly, the declaratory relief Plaintiff seeks would be

useful in determining the parties' legal relationship and would terminate the issue of whether [the

insurer] must defend and indemnify the [insured] in the state tort action.").

        Narrowing in on the dispute related to Johns Brothers' motion, here, the parties disagree

not on whether declaratory relief is appropriate, but rather on whether the issues raised in the

cross claim involve the same "case or controversy" as the declaratory judgment action.  If the

cross claim arises out of the same "transaction or occurrence," then it is properly joined under

Federal Rule of Civil Procedure 13(b) and 28 U.S.C. § 1367.[2]  Although joining such claims

avoids "piecemeal litigation" in both federal and state courts, it also eliminates the benefit of the

original declaratory judgment action, as West American must either decline to defend Johns

Brothers and risk substantial exposure, or take on the expense of defending Johns Brothers

against the cross claim, yet in the very next breath argue to the court that it is not under a duty to

provide such defense.  Likewise, if all claims are tried together Johns Brothers must proceed

unaware as to "whether [it] alone must pay any judgment recovered" by the Claphams and

"[s]urely [its] willingness to attempt a settlement and the vigor of [its] defense will be materially

affected" by the answer to such question.  <u>Howard</u>, 173 F.2d at 928.  Considering these

competing goals, the court concludes first, that the Claphams' claim does not arise out of the

-----

        [2] Rule 13(b) uses the language "same transaction or occurrence" while 28 U.S.C. § 1367
explains the test as requiring the "same case or controversy."  Both tests seek to establish
whether the differing claims "comprise[] but one constitutional 'case'" in that they "derive from
a common nucleus of operative fact."  <u>Axel Johnson, Inc. v. Carroll Carolina Oil Co.</u>, 145 F.3d
660, 662 (4th Cir. 1998).  For simplicity, the court will use the phrase "transaction or
occurrence."

same transaction or occurrence as West American's declaratory judgment action or Johns

Brothers' counterclaim; and second, that even if the "transaction or occurrence" test was

satisfied, the court would decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. §

1367(c)(2), as the supplemental claim substantially predominates over the declaratory judgment

contract interpretation dispute.

### 1. Different Transaction or Occurrence

Examining the caselaw cited by the parties as well as additional sources, the court

concludes that although in some circumstances a single suit addressing all claims is dictated by

the facts and legal issues, here, the Claphams' cross claim should be dismissed as it fails the

"transaction or occurrence" test.  Looking first to the procedural standard for properly bringing a

cross claim, under Rule 13(g) a cross claim may involve "any claim by one party against a co-

party arising out of the transaction or occurrence that is the subject matter either of the original

action or of a counterclaim therein."  Fed. R. Civ. P. 13(a).  Several tests have been recognized to

define "transaction or occurrence" including: (1) "whether the issues of fact and law . . .  are

largely the same;" (2) "whether substantially the same evidence bears on both claims;" and (3)

"whether any logical relationship exists between the two claims."  Whigham v. Beneficial Fin.

Co. of Fayetteville, Inc., 599 F.2d 1322, 1323 (4th Cir. 1979).[3]

---

[3] Although the Whigham court was analyzing counterclaims under Rule 13(a), such
subsection also turns on whether the claims arise out of the same "transaction or occurrence."
See Fed. R. Civ. P. 13(a); see also Federman v. Empire Fire and Marine Ins. Co., 597 F.2d 798,
811 (2d Cir. 1979) (recognizing that "the test for determining the scope of ancillary jurisdiction
over counterclaims and cross-claims is synonymous with the Rule 13(a) test for defining
compulsory counterclaims"); Collier v. Harvey, 179 F.2d 664, 668 (10th Cir. 1950) (stating that
the language of subdivision 13(g) "parallels language in subdivision (a) and should receive
similar construction"); 6 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure:
Civil 2d § 1432 ("Since the same verbal formulation also serves as the basis for defining
compulsory counterclaims under Rule 13(a), most courts have held that the standards developed

Applying the above tests to situations similar to the instant matter, a number of district courts have held that when a negligence based cross claim is raised in a declaratory judgment action seeking clarification of contract obligations unrelated to negligence, that the cross claim does not arise out of the same transaction or occurrence.  In <u>Globe Indemnity Co. v. Teixera</u>, 230 F. Supp 444 (D. Hawaii 1963), the court granted the plaintiff's motion to dismiss the counterclaims and cross claims stating:

> The subject matter of the original action in this case is the liability or non-liability of plaintiff on the insurance policy. The cross-claims are for damages resulting from the accident alleged.  Thus, the claims in the cross-claims did not arise out of the transaction or occurrence that is the subject matter of the original action . . . .  None of [the defendants are] prejudiced by being prevented from litigating in this Court issues brought in by them which are entirely different from the original issue and which they originally could not have brought into this Court.

<u>Id.</u> at 448-49.  Likewise, relying on <u>Teixera</u>, a district court from within this circuit came to a similar conclusion.  <u>See</u> <u>American Fidelity Fire Ins. Co., v. Hood</u>, 37 F.R.D. 17, 20, 24 (E.D.S.C. 1965) (recognizing that although the parties were "thrown together because of one alleged tortious act," that the "liability issue must be litigated separately from the insurance coverage issue" because they do not arise out of the same transaction or occurrence); <u>see also</u> <u>Vermont Mut. Ins. Co. v. Everette</u>, 875 F. Supp. 1181, 1186 (E.D. Va. 1995) ("[N]o overlapping issues of fact or law exist between [the declaratory judgment] action and the underlying state action . . . [because] the state court action involves alleged torts by [the insured], while determination of this action involves [the insurer's] and the [insured's] obligations.").

Although caselaw reaching the opposite conclusion exists, similar tests to those discussed above are applied in such cases; the results are only different because the facts and legal issues of

---

for dealing with compulsory counterclaims also apply to cross-claims under Rule 13(g).").

9

the declaratory judgment action and the cross claims are nearly identical, warranting adjudication

of all claims in a single suit.  See Collier v. Harvey, 179 F.2d 664, 668 (10th Cir. 1950)

("[A]djudication with respect to the facts at the time of the accident would determine whether

[the third party's] claim was within the coverage of the policy and also determine whether [the

insured] was liable to [the third party] for the negligence [alleged] . . . .  In other words, the

issues of fact necessary to determine both legal questions were identical."); Plains Ins. Co. v.

Sandoval, 35 F.R.D. 293, 295 (D. Colo.1964) ("To avoid a multiplicity of suits it is appropriate

that [all] claims . . . be adjudicated in the same action as was brought by the insurance company

to obtain a declaratory judgment . . . if the evidence which is necessary to an adjudication of the

rights of the parties under the policy is substantially the same evidence as would indicate whether

the alleged tort-feasor is liable to the injured third parties.").  Therefore, here, caselaw cited by

the opposing parties is not in conflict; rather, if the factual and legal issues in the declaratory

judgment action and the cross claim are closely related, a single suit is warranted, if they are

vastly different, the cross claim cannot be maintained in the same action.[4]

---

[4] The issue before the court has also been squarely addressed in Wright and Miller's treatise on Federal Practice and Procedure which states:

A good illustration of the application of [the "transaction or occurrence"] test is provided by an action by a liability insurer for a declaratory judgment of noncoverage, naming its insured and the injured person as codefendants. In such a situation may the injured person assert a cross-claim against the insured for his injuries? If the company is seeking to determine whether the terms of its policy extend to the accident in question, it is possible to conclude that the injured party's claim of negligence involves a totally different factual investigation than the dispute between the insured and the injured party and that the cross-claim does not qualify under Rule 13(g). However, a cross-claim for damages clearly would be appropriate if the declaratory judgment action took a slightly different form and more of a logical relation existed between the claim and the cross-claim. This would be true, for example, when the insurer is claiming nonliability on the ground that the car in question was not under the control of the insured at the time of the accident, and the insured is raising the same defense against the injured person.

Here, the situation is unlike <u>Collier</u> and <u>Sandoval</u> and nearly identical to <u>Teixera</u> and <u>Hood</u>. Although the parties were "thrown together because of one alleged tortious act," the facts and legal questions before the court in the declaratory judgment action are not sufficiently similar to the cross claim such that they arise from the same transaction or occurrence. Applying the three "transaction or occurrence" tests applied by the Fourth Circuit in <u>Whigham</u>, first, the "issues of fact and law" are not "largely the same." <u>Whigham</u>, 599 F.2d at 1323. Although the declaratory judgment action obviously references the oil spill, the bulk of West American's contentions have nothing to do with the Claphams' allegations of negligence, breach of the oil delivery contract, or fraud. Instead the declaratory judgment action addresses issues such as whether the policy definitions classify the oil spill as an "occurrence," as a discharge or release of a "pollutant," as arising from Johns Brothers' "product" or "work," as well as whether Johns Brothers promptly notified West American and cooperated in the investigation. (Compl. ¶¶ 22-32.) Likewise, the issues of fact are not "largely the same" as unlike the Claphams' claims, the policy construction dispute does not turn on a factual investigation into each and every visit that Johns Brothers made to the Claphams' residence during late 2004 and early 2005.

Second, "substantially the same evidence" does not bear on both claims. <u>Whigham</u>, 599 F.2d at 1323. Again, the general background of the oil spill will be necessary to the declaratory judgment action, however, the most pertinent facts appear to be the notification of West American and investigation that occurred <u>after</u> the spill, as the majority of West American's other claims merely assume that the spill occurred and focus on the legal ramifications of the spill under the insurance contract. In contrast, the cross claims, alleging negligence, breach of

---

6 Wright & Miller, <u>Fed. Prac. & Proc. Civ. 2d</u> § 1432.

11

the oil delivery contract, and fraud, are heavily fact dependant, requiring detailed investigation into numerous visits that Johns Brothers made to the Claphams' home in late 2004 and early 2005, as well as investigation into the Claphams' heating system, how it failed, and what Johns Brothers "should" have learned from its inspections.  The pertinent facts are clearly divergent.

Third, there is not a "logical relationship" between the declaratory judgment action and the cross claim sufficient to justify that both be addressed in a single lawsuit.  <u>Whigham</u>, 599 F.2d at 1323.  As noted, there is clearly a relationship in that the oil spill is what prompted both the declaratory judgment action and the cross claim; however, there is not a logical relationship between the <u>claims</u>.  West American's claims allege that the oil spill falls outside of the terms of the insurance contract.  Whereas although the Claphams' claims involve the same oil spill, the claims themselves are for negligence, breach of a <u>different</u> contract, and fraud; thus, such claims are unrelated to the rights and obligations created by the West American insurance contract.  <u>See id.</u> (finding no "logical relationship" even though all claims involved "the same loan" because the counterclaim alleged contract default whereas the original claim did not arise out of the contractual transaction).  Therefore, under any of the tests applied in <u>Whigham</u>, the declaratory judgment action and cross claims do not arise from the same transaction or occurrence; thus, this court is without jurisdiction to entertain the Claphams' cross claim and Johns Brothers' motion to dismiss is granted.

## 2. The Cross Claim would "Substantially Predominate" over the Declaratory Judgment Action

In the alternative, even if the court found that the Claphams' cross claim arose from the same transaction or occurrence as the declaratory judgment action, the court would decline to exercise supplemental jurisdiction as the Claphams' negligence, breach of oil delivery contract,

and fraud claims could not have originally been filed in this court and would "substantially

predominate[] over the claim or claims over which [this court] has original jurisdiction."  28

U.S.C. § 1367(c)(2); see Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) ("The doctrine of

supplemental jurisdiction 'thus is a doctrine of flexibility, designed to allow courts to deal with

cases involving pendent claims in the manner that most sensibly accommodates a range of

concerns and values.'" (quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7

(1988))).  Johns Brothers and the Claphams are not diverse; therefore, the Claphams' cross claim

can only come before this court based on supplemental jurisdiction.[5]  As discussed in the

previous section, the Claphams' claims are extremely fact intensive and discovery and

adjudication of these issues would predominate over the factually limited legal dispute regarding

policy interpretation at issue in the declaratory judgment action.  See Green v. Zendrian, 916 F.

Supp. 493, 498 (D. Md. 1996) (noting that "[f]ederal courts have not hesitated to dismiss or

remand state causes of action where the state claims would require elements of proof that are

distinct and foreign to the federal claim" and declining to exercise supplemental jurisdiction

pursuant to § 1367(c)(2) in part because "the plaintiffs' state law claims would have required the

jury to make a number of complex factual determinations which were unnecessary to the

resolution of the federal issues") (citations omitted).  Therefore, pursuant to section 28 U.S.C.

§ 1367(c)(2), the court declines to exercise supplemental jurisdiction.  See Shanaghan, 58 F.3d at

112 ("Justice is better served by a jurisdictional rule that includes some measure of discretion for

the district court.").

_____

[5] It appears that Paul Clapham, as a citizen of the United Kingdom, is diverse from Johns Brothers, a citizen of Virginia.  However, as the cross claim was filed collectively by Paul and Paula, Ross and Kendal, Virginia citizens, complete diversity does not exist.

Furthermore, although not an independent ground for declining supplemental jurisdiction, it bears noting that an insurance company's right to bring a declaratory judgment action would be entirely undermined if third party cross claims seeking adjudication of an alleged tort were always tried in the same lawsuit.  Specifically, the insurance company would be "placed in a precarious dilemma" as if the insurer "owes no further duties to the other parties, it can retire gracefully and leave the [insured] and the [third party] to settle their own differences;" however, if the insurer "must defend the . . . action and pay any judgment recovered therein, [the insurer] is entitled to know this." American Cas. Co. of Reading, Pa. v. Howard, 173 F.2d 924, 928 (4th Cir. 1949) (emphasis added).  Likewise, in determining whether or not to exercise jurisdiction over a declaratory judgment action, the Fourth Circuit has advised that the district court consider whether the lawsuit "will serve a useful purpose in clarifying and settling the legal relations in issue" and whether it will "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 422 (4th Cir. 1998) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)).

Considering the instant situation prior to the cross claim, plaintiff's declaratory action was poised to afford relief from uncertainty and clarify legal relations.  However, addressing West American's suit in conjunction with the cross claim completely eliminates the possibility of achieving these goals.  On the contrary, doing so would create uncertainty as West American would either have to expose itself to considerable risk by not defending Johns Brothers against the cross claim, or to defend Johns Brothers in one breath and attack it with the next.  Therefore, it is clear to the court that equitable claims arguing for the advancement of "judicial economy" or the avoidance of "piecemeal litigation" are far outweighed by the Declaratory Judgment Act's

14

intent to allow parties like West American and Johns Brothers to seek a judicial declaration that <u>clarifies</u> legal rights and obligations and allows such parties to avoid being "placed in a precarious dilemma."  <u>Howard</u>, 173 F.2d at 928; <u>see also</u> <u>Shanaghan</u>, 58 F.3d at 112 (recognizing "fairness to the parties [and] the existence of any underlying issues of federal policy" to be among the factors properly considered when assessing whether to decline to exercise supplemental jurisdiction pursuant to § 1367(c)).  As a result, based on the analysis presented in this section and the previous section, Johns Brothers' motion to dismiss the Claphams' cross claim is granted.

### B.  Petrochem's Motion to Dismiss Itself as a Party

Petrochem's motion, filed pursuant to Rule 12(b)(6), should only be granted if it appears "beyond doubt" that West American cannot prove any set of facts that would entitle it to relief. <u>Conley v. Gibson</u>, 355 U.S. 41,  45-46 (1957).  Here, as West American seeks a declaratory judgment against Petrochem, the court must consider whether under any set of facts Petrochem would have a cause of action against either Johns Brothers or the Claphams which would potentially expose West American to liability under its insurance contract.  Because West American has presented such set of facts, the court must deny Petrochem's motion.

Petrochem's motion to dismiss states, consistent with the complaint, that Petrochem's only involvement in the instant dispute is that Petrochem was retained to perform oil reclamation and cleanup on the Claphams' property.  Petrochem further states that it has been "reimbursed for its reasonable and necessary costs incurred for the reclamation action in controversy." (Petrochem Mo. to Dismiss 2.)  However, West American alleges that the Claphams "entered into an agreement with Petrochem where Ms. Thompson agreed to pay Petrochem for the work

performed in accordance with the Virginia Department of Environmental Quality ("VDEQ") Petroleum Tank Reimbursement Program and that she also agreed to assign the reimbursement claim to Petrochem." (West American Resp. 2.) Furthermore, plaintiff explains the impact of such, stating: "By way of future course of action, Petrochem may make an indirect claim against West American for the services Petrochem rendered during remediation. Petrochem's claim may be based upon its reimbursement claim and the ability to file suit against West American's insured, Johns Brothers." (Id. at 4-5.) As Petrochem failed to file a rebuttal brief challenging plaintiff's allegations, and such statements are not in conflict with the allegations in the complaint, it appears that under a certain set of facts, Petrochem may have a claim against West American.[6] Therefore, as the purpose of the Declaratory Judgment Act is to create a "speedy and inexpensive method of adjudicating legal disputes . . . and to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights," Quarles, 92 F.2d at 325, West American need not wait until Petrochem's potential right accrues to seek adjudication of its legal obligations with respect to Petrochem. As a result, Petrochem is a proper party, and Petrochem's motion to dismiss is denied.

## V. Conclusion

For the reasons discussed more fully above, Johns Brothers' motion to dismiss the Claphams' cross claim is **GRANTED**, as the cross claim does not arise out of the same transaction or occurrence as the declaratory judgment action or Johns Brother's counterclaim.

---

[6] The court declines to address West American's analysis regarding whether Petrochem is a "necessary party" as the evidence before the court indicates that West American is at least a "proper" party as the assignment of the VDEQ reimbursement claim to Petrochem creates the potential for Petrochem to seek compensation from West American based on the insurance policy in issue.

Furthermore, even if the court categorized all claims as arising from the same transaction or occurrence, the court would decline to exercise supplemental jurisdiction over the cross claim pursuant to 28 U.S.C. § 1367(c)(2).  Additionally, Petrochem's motion to dismiss itself as a party is **DENIED**, as plaintiff has alleged a set of facts establishing the potential for Petrochem to seek recovery under the insurance policy in issue.

The Clerk is **REQUESTED** to mail copies of this Order to counsel for all parties.

**IT IS SO ORDERED.**

_____/s/_____
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March  _3__ , 2006